IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CORDELL SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:07-cv-00808-MJR-DGW |
| | ) |
| GEORGE WELBORN, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM AND ORDER

REAGAN, District Judge:

Plaintiff Cordell Sanders ("Sanders"), formerly incarcerated at Menard Correctional Center ("Menard"), filed this lawsuit on November 19, 2007, against various Illinois Department of Corrections ("IDOC") officials, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Sanders filed an amended complaint on June 30, 2009 (Doc. 35). The amended complaint is divided into three counts. Count One alleges that George Welborn, Michael Hoffman, Terry Luehr and Daniel Porter ("Defendants") used excessive force against Sanders in violation of his Eighth and Fourteenth Amendment rights. *Id*. Count Two alleges that Defendants failed to provide Sanders with adequate medical treatment in violation of the Eighth Amendment. *Id*. Count Three alleges that Defendants violated Sanders's Fourteenth Amendment rights by directing racial slurs toward him. *Id*.

**BACKGROUND**

Currently pending before the Court is Defendants' Motion for Summary Judgment and Memorandum in Support (Docs 52, 53). In their motion, Defendants argue that they are entitled to summary judgment on Counts Two and Three of the Amended Complaint because: (1) Sanders has not established that he suffered from a objectively serious medical condition or that Defendants acted with a sufficiently culpable state of mind; (2) there is no

evidence that Sanders was discriminated against on the basis of his race; (3) they are entitled to qualified immunity; and (4) the claims against them in their official capacity are barred by the Eleventh Amendment.

## FACTS

At all times relevant to this action, Defendants Welborn, Hoffman and Luehr were correctional officers at Menard, and Porter was an Internal Affairs officer at Menard (Doc. 35). The events that occurred on July 3, 2007 are in dispute.[1] Sanders alleges that he was physically assaulted by Defendants Welborn, Hoffman, Luehr and Porter on July 3, 2007. *Id*. During the alleged assault, Sanders contends that Welborn and Hoffman uttered numerous highly offensive racial slurs (Docs. 35, 53-1, 60). As a result of the assault, Sanders allegedly suffered bleeding and bruised wrists, pinched and damages nerves in his right hand, and pain to his face, back, chest and testicles. *Id.* Immediately after the attack, Sanders reportedly requested medical care from Welborn and Hoffman, who refused his request. *Id.* Sanders also contends that he requested medical care from an unnamed gallery officer on July 4, 2007. *Id*. The correctional officer allegedly told Sanders that he would look into getting him medical care, but Sanders never heard back from him. *Id*.

On July 9, 2007, Sanders alleges that Welborn and Hoffman returned to his cell, placed him in a chokehold, and wrapped a bed sheet around his neck while stating "this is what happens to nigger monkeys who attack clan officers" (Docs. 35, 53-1, 60). Sanders allegedly requested medical treatment from an unknown gallery officer on this date. *Id*. Despite Sanders requests for medical care, he claims that he was never seen by a doctor while incarcerated at Menard. *Id*.

---

[1] Plaintiff's claim for excessive force (Count One of his First Amended Complaint) is not before the Court. As a result, the Court will not go into detail regarding the alleged assault and the analysis below does not apply to this Count.

Not surprisingly, Defendants Welborn, Luehr and Porter paint a very different picture of the events that occurred on July 3rd and 9th, 2007. Welborn denies that he directed racial slurs toward Sanders, denies that he or anyone physically assaulted Sanders, denies that Sanders requested medical care from him or that he denied any request, and denies that he was aware that Sanders was in need of medical attention (Doc. 67-1, Ex. A). Similarly, Luehr denies that he assaulted Sanders, and claims that he was unaware that Sanders was in need of medical care. *Id.* at Ex. B. Porter claims that he has never used force against an inmate during his employment with the IDOC. *Id.* at Exhibit C.

## LEGAL STANDARDS

### *Motion for Summary Judgment*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Further, the party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 at 255 (quotation omitted); see also Fed. R. Civ. P. 56(e)(2) (requiring adverse party to "set out specific facts"). Finally, at summary judgment, the "court's role is not to

3

evaluate the weight of the evidence, judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

### *Deliberate Indifference*

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  In order prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotations omitted); *see also Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007).  With respect to the objective component of that inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005).

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely deliberate indifference.  "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-653 (7th Cir. 1985).  Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. *Id*. at 653*; Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).  Put another way, a plaintiff must demonstrate that the prison officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that reference. *Greeno*, 414 F.3d at 653.

*Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment is charged with the prevention of official conduct that discriminates on the basis of race. *Washington v. Davis*, 426 U.S. 229, 239 (1976). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolf v. McDonnell*, 418 U.S. 539, 556 (1974). Further, the "strict scrutiny standard of review applies to racial classifications in the prison context." *See Johnson v. California*, 543 U.S. 499 (2005).

A plaintiff asserting a claim of race discrimination under the Equal Protection Clause of the Fourteenth Amendment must establish that (1) he belongs to a protected class such as a racial minority; (2) a state actor treated him differently from other similarly situated individuals; and (3) the state actor was motivated by a discriminatory purpose. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Plaintiff "must show intentional discrimination against him because of his race, not merely that he was treated unfairly as an individual." *Huebschen v. Dep't of Health and Social Serv.,* 716 F.2d 1167, 1171 (7th Cir. 1983); *see also Nabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993) (a plaintiff cannot rely solely on different treatment as evidence of a constitutional violation, but rather must demonstrate that the defendant treated him differently because of his race).

Finally, "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

## ANALYSIS

*Deliberate Indifference Claims*

The threshold inquiry in this case is whether Sanders's medical needs were "objectively serious." Sanders claims that Defendants denied him adequate medical care by

refusing his requests for treatment of his "bleeding and bruised wrists, pinched and damaged nerves in his right hand, back pain, facial pain, testicular pain and chest pain" on July 3, 2007 (Doc. 60). Defendants contend, however, that Sanders cannot survive summary judgment because he did not suffer from a serious medical need as a result of the alleged July 3, 2007 incident (Doc. 53).

Not all medical conditions are sufficiently serious to implicate the Eighth Amendment. For example, "a prison's medical staff that refuses to dispense bromides for sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue … does not by its refusal violate the Constitution." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) ("Not every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim."). Sanders claims that his injuries consisted of bleeding and bruised wrists, pinched and damaged nerves in his right hand, back pain, facial pain, testicular pain and chest pain" (Doc. 60). When asked in his deposition about the severity of the lacerations to his wrists, Sanders explained that his wrists were bleeding "a little" and indicated that the bleeding may have been stopped by a "couple band-aids" (Doc. 53-1, p. 90). Sanders stated that the pain resulting from being kicked in the testicles lasted for a "couple of hours," while the pain from being kicked in the chest lasted for a "couple of minutes." *Id*. at 96-97. Taking Sanders's words at face value, it does not appear that he has directly alleged pain sever enough to reach constitutional proportions. *See*, e.g., *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (an inmate who suffered a swollen cheek and a split lip in an altercation did not present an objectively serious medical need); *Whitmore v. Walker*, No. 04-cv-837, 2009 WL 900034, at *6 (S.D. Ill. March 27, 2009) (bruises and a swollen ankle did not present an objectively serious medical need).

Although Sanders testified that he was never taken to a healthcare unit or visited by a doctor for treatment of his injuries during the time he was incarcerated at Menard, (Doc. 53-1, pp. 88-89), the record reveals that Sanders was seen by a correctional medical technician in his cell on July 31, 2007 (Doc. 71-1). The medical record indicates that Sanders reported no pain to his neck, back, testicles or any other part of his body. *Id.* Sanders reportedly had no contusions or abrasions, but did complain of light bruising to his wrist and light numbness and tingling in his pinky finger. *Id.* Thus, while Sanders may have experienced some pain, there is no evidence that, at the time that he was allegedly denied medical care, his conditions were "objectively serious." Even when drawing all *reasonable* inferences in favor of Sanders, at most, he appears to have suffered minor aches, pain and discomfort.

In addition, Sanders cannot establish that Defendants acted with "a sufficiently culpable state of mind." *Walker*, 293 F.3d at 1037. As to the defendant's state of mind "negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2006). Reckless conduct is "conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Foelker v. Outagamie County,* 394 F.3d 510, 513 (7th Cir. 2005) (citing *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)). Failing to provide immediate medical attention for minor aches and pains does not constitute reckless conduct. Accordingly, Defendants' Motion for Summary Judgment (Doc. 52) is **GRANTED** as to Count Two of the First Amended Complaint (Doc. 35).

### *Equal Protection Claims*

Sanders, an African-American, alleges that Defendants Welborn and Hoffman violated his rights to equal protection of the law when they allegedly assaulted him while calling him racially derogatory names and later denied him medical care (Docs. 35, 58).

Sanders, however, has not set forth any evidence that he was treated differently from any other inmate of a different race. To satisfy the similarly situated prong, Sanders must show that he is "directly comparable in all material respects" to another inmate not in his protected class. *Wyninger v. New Venture Gear, Inc.* 361 F.3d 965, 979 (7th Cir. 2004); *see also Lucas v. Chicago Transit Authority*, 367 F.3d 714, 732 (7th Cir. 2004) (requiring proof that similarly situated individuals "who were not members of the protected class" were treated more favorably in order to establish racial intent). Sanders has not identified any other inmate of a different race who was in a similar situation and was more favorably treated than he.

Moreover, the only evidence of racial discrimination that Sanders offers against Welborn and Hoffman are the disputed remarks and gestures made regarding Sanders's race. According to Sanders, Defendants' comments and actions demonstrate that he was assaulted and denied medical treatment because of his race. However, Defendants' alleged racial slurs and gestures do not, by themselves, establish a genuine issue of material fact. *See McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989) (a person's subjective belief that he or she was subject to racial discrimination is not sufficient to create a genuine issue of material fact). While the acts and remarks alleged are deplorable and offensive, these isolated incidences, do not establish a constitutional violation. *See Dewalt*, 224 F.3d at 612.

Sanders has failed to establish a prima facie case of racial discrimination under the equal protection clause. He has not set forth any evidence that he was treated differently than other inmates of a different race, or that Defendants treated him differently because of his race. Consequently, the Court **GRANTS** summary judgment on Count Three of the First Amended Complaint.

### *Qualified Immunity*

Typically, the doctrine of qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir.2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). However, officers "who act unreasonably or 'who knowingly violate the law'" are not protected by qualified immunity. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir.2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).

On summary judgment, the Court makes two key inquiries in evaluating qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff[ ], show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). "[T]he court may decide these questions in whatever order is best suited to the case at hand." *Id*. (citing *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is inappropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The Seventh Circuit has expressly ruled that in a § 1983 case, where no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) (citing *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir.1995)). Since the Court has concluded that Defendants Welborn, Hoffman, Porter and Luehr did not violate Sander's constitutional rights (on the Counts being disputed, as outlined above), it is unnecessary to determine whether these defendants are entitled to qualified immunity.

### *Official Capacity Claims*

The Eleventh Amendment bars suits in federal court for money damages against state officials in their official capacities. *See Kroll v. Board of Trustees of University of Illinois*, 934 F.2d 904, 907-908 (1991). Although a state may waive its Eleventh Amendment immunity and Congress may abrogate the immunity, *see Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Meadows v. Indiana*, 854 F.2d 1068, 1069-70 & n.3 (7th Cir. 1988), neither occurred here. *See Quern v. Jordan*, 440 U.S. 332, 338-45 (1979) (holding that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment sovereign immunity); *Kroll*, 934 F.2d at 909 & n.5 (same); *Thomas v. Walton*, 461 F.Supp.2d 786, 799 (S.D. Ill. 2006) (Illinois has not waived its Eleventh Amendment immunity from suit in federal court). Moreover, states and state agencies, as well as state employees sued in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Ryan v. Illinois Dep't of Children & Family Servs.*, 185 F.3d 751, 758 (7th Cir. 1999).

Conversely, the Eleventh Amendment does not preclude suits in federal court for money damages against state officials in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 26-7 (1991); *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). And, "[t]he Eleventh Amendment does not preclude an official capacity suit seeking injunctive relief against a state official, provided the relief sought is prospective and based on the unconstitutionality of the state official's actions." *Thomas*, 461 F.Supp.2d 786 at 799 (citing *Kentucky v. Graham*, 473 U.S. 159, 169 n. 18 (1985)).

In this case, Sanders seeks retrospective relief; that is, actual, consequential, compensatory and punitive damages against Defendants Welborn, Hoffman, Porter and Luehr in their official and individual capacities (Doc. 35). Sanders's official capacity claims must be deemed to be claims against the IDOC. *See Thomas*, 461 F.Supp.2d at 799 (an official capacity

suit against prison correctional officers for actions taken under the color of state law is treated as a suit against the IDOC); *Brunken v. Lance*, 807 F.2d 1325, 1329 (7th Cir. 1986) ("[A]n official capacity suit against a state official for actions taken under the color of state law . . . is, in all respects other than the name, to be treated as a suit against the [government] entity.")  Because Sanders is seeking monetary damages, the IDOC is barred from suit pursuant to the Eleventh Amendment.  As a result, the claims asserted in Counts One, Two, and Three of the First Amended Complaint against Defendants Welborn, Hoffman, Porter and Luehr, in their *official capacities* are **DISMISSED**.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 52) as to Counts Two and Three of the First Amended Complaint, and all claims asserted in Counts One, Two, and Three of the First Amended Complaint against Welborn, Hoffman, Porter and Luehr in their official capacity.  This case will proceed to trial on January 31, 2011 on Sanders's sole remaining claim of excessive force against Defendants Welborn, Hoffman, Porter and Luehr (Count One of the First Amended Complaint).

**IT IS SO ORDERED.**

**DATED December 17, 2010.**

/s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**United States District Judge**